UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARK KRESGE, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 09-248-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
|     *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") appeal contends that the administrative law judge wrongly relied on Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid"), was required to develop the record further, failed to follow Social Security Ruling 83-20 when he was required to do so, assigned a residual functional capacity that was not supported by substantial evidence, and wrongly rejected a treating physician's retrospective opinion. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff was insured under the Social Security Act only through December 31, 2001, Finding 1, Record at 23; that as of that

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on April 2, 2010, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

date he suffered from a disorder of the left shoulder, an impairment that was severe but did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.* at 23-25; that at the relevant time he had the residual functional capacity to lift and carry up to 10 pounds frequently and up to 20 pounds occasionally, and to stand and walk for up to six hours and sit for up to two hours in an average eight-hour work day, but he could not perform any work activities overhead or above the shoulder with the left arm, Finding 5, *id.* at 25; that he had no past relevant work, Finding 6, *id.* at 27; that, given his age (35 at the alleged date of onset of disability), education (at least high school), work experience, and residual functional capacity, there were jobs in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id.*; and that he was, therefore, not under a disability, as that term is defined in the Social Security Act, at any relevant time, Finding 11, *id.*   The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 404.981, *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 523 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S.

137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

### *1. The Grid*

The plaintiff contends that the administrative law judge impermissibly used the Grid as a framework for decision-making.  Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 10) at 2-3.  The administrative law judge's opinion on this point provides, in its entirety:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely non-exertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).
>
> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20.  However, the additional limitations of avoiding shoulder level and overhead work with the left arm have little or no effect on the occupational base of unskilled light work.  A finding of "not disabled" is therefore appropriate under the framework of this rule.

Record at 27.

The plaintiff correctly points out, Itemized Statement at 3, that I noted in my Report and Recommended Decision in *Stern v. Astrue*, Civil No. 08-213-P-S (Docket No. 20) (March 23, 2009), *aff'd* April 13, 2009 (Docket No. 21), with respect to an inability to perform any overhead work with both upper extremities, that, in the absence of factual or case law support for the conclusion that this limitation had no more than a marginal effect on the light occupational base, expert opinion is required. *Id*. at 4-5. The other case cited by the plaintiff, *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001), also involved the preclusion of "work at or above the shoulder level," presumably with both upper extremities. In this case, however, the limitation is only on the left upper extremity, not both. There is case law that supports the administrative law judge's conclusion, in this case, that the need to avoid shoulder level and overhead work only with the left arm has only a marginal effect on the occupational base of unskilled light work. *Summers v. Commissioner of Social Security*, No. CIV S-08-1309-CMK, 2009 WL 2051633 (E.D.Cal. July 10, 2009), at *23 (limitation to no frequent forceful overhead reaching with left upper extremity "does not represent a significant non-exertional limitation on plaintiff's ability to perform unskilled light work"). This is all that the First Circuit required in *Candelaria v. Barnhart*, 195 Fed.Appx. 2, 3-4 (1st Cir. 2006).

At oral argument, counsel for the plaintiff directed the court's attention to Judge Cohen's recommended decision in *Nixon v. Barnhart*, No. 05-193-P-S, 2006 WL 1554673 (D. Me. June 1, 2006), but in that case the court distinguished cases in which claimants were precluded from tasks requiring constant overhead reaching with the left arm as concerning "materially different sorts of upper-extremity restrictions" from those at issue in that case. *Id*. at *6. That material difference also obtains here.[2]

---

[2] Also at oral argument, counsel for the plaintiff contended that a check mark in a box entitled "Limited" on the line marked "Reaching all directions (including overhead)" on the Physical Residual Functional Capacity Assessment

4

The plaintiff is not entitled to remand on this basis.

## 2. Need to Develop the Record

The plaintiff next asserts that the administrative law judge "relied on a flawed record transmitted to him from the state disability agency[,]" because those reports were rendered in 2005, more than three years after the date last insured, and "were expressly designated as 'current.'" Itemized Statement at 3-4. Thus, he contends, the administrative law judge was required to consult a medical advisor at the hearing, send the plaintiff for a post-hearing medical evaluation, or "remand[] the claim to the state agency for a medical review." *Id*. at 4.

The two state-agency evaluations cited by the administrative law judge, Record at 27, are marked as "current" evaluations under the heading "RFC assessment is for." *Id*. at 287, 323. Each form also provides a line for "date last insured," but that box is not checked in either case. Neither assessment appears to be intended to have retrospective application in general, or in particular to the period before December 31, 2001. Both are dated in 2006. *Id*. at 294, 330. The administrative law judge should not have relied on these assessments.

This conclusion does not mean that the case must necessarily be remanded, however. None of the regulations cited by the plaintiff, Itemized Statement at 4, supports his presentation of the three alternative courses he lists as the only alternatives available given the inapplicability of the two cited assessments, including the citations to HALLEX, the Hearings, Appeals and Litigation Law Manual, an internal procedural document of the Social Security Administration.

---

form used by a state-agency medical reviewer may only be interpreted to impose an unspecified limitation on all reaching, even though the line is the only one on the form to deal with reaching and in the space below the reviewer has written "See page three [imposing push/pull limitations on both upper extremities]—Left shoulder- No work above shoulder level, avoid frequent lifting of more than 5# with elbows next to body." Record at 290. I reject the plaintiff's interpretation. Counsel asserted that the recommended decision in *Quimby v. Astrue*, No. 07-128-B-W, 2008 WL 660180 (D. Me. Mar. 5, 1008), requires this interpretation, but it does not. The opinion in that case merely recites what was written in the state-agency reviewer's report; how that information was to be interpreted was not an issue in the case.

*See E.E.P. v. Barnhart*, No. 03-246-P-C, 2004 WL 1529262 (D. Me. June 24, 2004), at *1-*2. None of the cited regulations is cast in obligatory terms.

As this court has noted many times, whether to consult a medical advisor at the hearing is always a matter within the administrative law judge's discretion and therefore the "failure" to do so is not cause for remand. *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 5 (1st Cir. 1987). A consultative evaluation becomes "necessary" only when the claimant presents evidence sufficient "to raise a suspicion concerning a non-exertional impairment." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). *See also Hopkins v. Astrue,* No. 07-40-P-S, 2007 WL 3023493 (D. Me. Oct. 12, 2007), at *4. With respect to any impairment other than the left shoulder limitations, about which the administrative law judge had far more than a suspicion, and which he included in the residual functional capacity he assigned to the plaintiff, the evidence submitted by the plaintiff does not reach this level with respect to the period before the date last insured, as discussed below. Finally, a "remand[] . . . to the state agency" is simply never mandatory under applicable case law and regulations.

The medical evidence submitted by the plaintiff from the period before the date last insured is not extensive. At the point of the sequential review process where residual functional capacity is determined, the burden of proof remains with the claimant. The following are all of the medical reports in the record:

1. Record at 186, Dr. Réjean Lebel letter dated March 3, 1994: plaintiff will have long-term difficulty in reaching with left upper extremity, should work with left elbow as close to body as possible, will be able to lift with shoulder in that position.

2. Record at 187-93, Dr. William Newkirk, Injured Worker Treatment Report dated December 13, 1996: "No above shoulder level work left arm."

3.  Record at 194-97, Dr. William Newkirk, Injured Worker Treatment Report dated February 2, 1994: plaintiff should work with left elbow close to body and do no lifting above his head.

4.  Record at 239-60, Records of Redington-Fairview General Hospital

Dated October 25, 2004: pain in right leg secondary to severe chain saw injury in 1976; patient "started having this pain . . . three years ago and has progressively gotten worse."

Dated March 29, 2003: pain in right buttock and in lower right leg, treatment with analgesics recommended.

Dated October 14, 2002: sudden onset of right flank pain, diagnosed as large right hydrocele and probable right kidney stone; placed on fluids and pain medication.

Dated June 5, 2002: large right testicle, treated with rest, ice; declined pain medication other than Advil and Tylenol.

5.  Record at 267-72, Records of Redington Medical Associates, dated September 8 and 16, 2004: treatment for pain in right lower back, gluteus, and leg, with medication and referral to pain clinic.

6.  Record at 295-307, Records of Redington-Fairview General Hospital pain clinic

Dated April 25, 2005: treated for pain in low back and right leg with medications and prescription for back brace.

Dated April 11, 2005: lumbar epidural steroid injection, pain reduced to 0 out of 10.

Dated March 28, 2005:  continue pain medications, plan for second lumbar injection.

      Dated March 14, 2005: lumbar epidural steroid injection, pain reduced to 2 out of 10.

      Dated February 28, 2005: low back and testicular pain treated with medication; lumbar injection planned.

      Dated January 28, 2005: treated chronic low back pain with right L5-S1 facet injection and right sacroiliac joint injection, pain reduced to 2 out of 10.

      Dated January 24, 2005: chronic low back pain, medications continued, previous right sacroiliac joint injections still helping.

7.    Record at 309-16, Office notes of Gust Stringos, D.O. dated 8/28/01 to 4/13/05: chronic back and pelvic/groin pain secondary to chain saw injury, first noted March 20, 2003, and treated thereafter with medication; only visit in 2001, on August 28, was for college physical, result unremarkable except for large right testicular mass, surgical removal of which is recommended.

8.    Record at 354-58, Partial office notes of Gust Stringos, D.O., dated 8/28/01 to 12/19/03, and three-part questionnaire drafted by plaintiff's representative dated February 12, 2008, on which Dr. Stringos checked each of three "yes" boxes and wrote: "His condition of 2005 would have been chronic – i.e., existed for prece[]ding years, certainly in 2001." The questions which Dr. Stringos answered in the affirmative[3] in the three-part questionnaire are the following:

      1. Based upon the existing records, and your personal recollection of Mr. Kresge's condition, in your opinion, <u>is it as likely as not</u> that the pain level and

---

[3] I note that Dr. Stringos said in a letter to the plaintiff's representative dated January 21, 2008, that he had "only a vague recollection of [his] encounters" with the plaintiff, and that it would be "difficult for [him] to be able to answer any specifics as to Mr. Kresge's condition, either [while he was treating the plaintiff] or now" without his medical records. Record at 349.

8

corresponding curtailment of physical capabilities expressed in these documents are consistent throughout i.e., if Mr. Kresge was incapable of performing a task in 2005 because of his ailments, it is as likely as not he would be incapable of performing that task in 2001?

2. Based upon these records and your personal recollection of Mr. Kresge's condition, in your opinion, <u>is it as likely as not</u> that, had there been medical examinations performed in the years 1995 through 2000, the statements expressed by Mr. Kresge as to his capabilities and inabilities during that period would be consistent with those statements expressed by Mr. Kresge in the records that currently exist?

3. Based upon these records and your personal recollection of Mr. Kresge's condition, in your opinion, <u>is it as likely as not</u> that the medical conditions of pain, inability to function at certain levels and other restrictive maladies and impairments as determined by the existing medical file, would have been of greater impairment and/or restriction but in any case of no lesser an impairment and/or restriction during the years 1995 through 2000?

8. Record at [370-77], Records of Newton Memorial Hospital, dated September 17, 1975 – November 2, 1975:  Treatment of massive chain saw laceration at age 15.

The administrative law judge addressed Dr. Stringos's retrospective opinion as follows:

> The statement by Dr. Stringos that the claimant's condition relating to his groin, back and right leg pain was present for several years prior to 2005 is not sufficient to meet this evidentiary burden [to show that the post-2005 impairments were present and disabling prior to December 31, 2001].  The best evidence of the existence of a disabling impairment during this period of time is the medical evidence itself and that is what is lacking for the period prior to December 31, 2001.  Moreover, Dr. Stringos saw the claimant on only one occasion in 2001 and then not again for two years.  This weighs heavily against a finding that his

>condition was severe at that point in time, as he did not seek any medical treatment.

Record at 26. I agree that the medical records support only the left shoulder limitations found by the administrative law judge to have existed before the date last insured. Dr. Stringos's only entry before the date last insured describes an "unremarkable" physical examination, excepting the right hydrocele, and his next note, dated March 20, 2003, recommends excision of the hydrocele noted in 2001 and states that the plaintiff was "otherwise quite healthy." Record at 358. Thus, Dr. Stringos's own records do not support his retrospective opinion given in 2008. In addition, the Redington-Fairview records note "sudden onset" of the pain related to the chain saw injury in October 2002, approximately 10 months after the date last insured. *Id*. at 256.

An administrative law judge is not required to further develop the record when a claimant is represented, unless he does not understand any of the treating physicians' records or finds gaps in those records or the records are otherwise inadequate to allow him to decide the case. 20 C.F.R. § 404.1512(e)(1); *see also White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). In order to obtain remand on this basis, the plaintiff must point to specific facts that were not brought out during the hearing and provide proof that additional medical evidence existed. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). Here, the plaintiff has provided all of the "additional medical evidence" that he could obtain from Dr. Stringos, and he does not suggest that any other medical provider is likely to have records from the relevant period.

Under these circumstances, the error in relying on the Hall and Chamberlain reports was harmless.

### 3. *Social Security Ruling 83-20*

The plaintiff argues that, because he was awarded Supplemental Security Income ("SSI") benefits as of January 2005, the administrative law judge was required to follow the procedure

established by Social Security Ruling 83-20 to determine the date of onset, apparently of the impairments found to be disabling as of 2005, and that the administrative law judge failed to do so. Itemized Statement at 5-6. "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." Social Security Ruling 83-20 ("SSR 83-20"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 51.

If the impairment for which benefits were awarded in 1995 was the left shoulder injury, no date of onset need be inferred because the administrative law judge included that impairment in his residual functional capacity analysis in this SSD case. If the impairment was the low back, groin, and right leg pain resulting from the chain saw injury, the relevant evidence has already been discussed. There is no need to infer the date of onset of that pain because the treating physician has no record of it before 2003, and the only other available medical records note a "sudden onset" of that pain in 2002. Both dates are after the date last insured.

If the 2005 award of SSI benefits was made on the basis of some other impairment, there is no mention of that impairment in the materials submitted to the court, and, therefore, it is impossible for me to determine whether the date of onset of that impairment is at issue in this case.

### 4. Light Work

The plaintiff next contends that the administrative law judge's conclusion that he was capable of light work before the date last insured "is not based on any medical opinion of record" and, therefore, must be rejected. Itemized Statement at 6-7. The state-agency reports by Drs. Hall and Chamberlain are the only support cited by the administrative law judge for this conclusion. Record at 26-27. As I have already noted, those reports were explicitly characterized as "current," not retrospective, by their authors and thus may not provide the basis

for determination of the plaintiff's residual functional capacity before December 31, 2001. There is certainly medical evidence, recounted above, to support a limitation on overhead or above-the-shoulder activities with the left arm, but none to support the lifting and carrying restrictions that are the hallmark of the exertional categories used by the commissioner, let alone the limitations on standing, walking, and sitting imposed by the administrative law judge.

At oral argument, counsel for the commissioner agreed that there was no medical evidence to support the limitation to light work, but contended that the administrative law judge was entitled to rely on his "unchallenged credibility findings" about the plaintiff's testimony. Neither the plaintiff's testimony, nor the entries he may have made on forms reporting his symptoms, is medical evidence, and medical evidence is necessary to support the residual functional capacity finding. *See Newberry v. Astrue*, No. 2:08CV00049, 2009 WL 2058870 (W.D.Va. July 13, 2009), at *5.

The case must be remanded on this issue.

### 5. *Rejection of Dr. Stringos's Retrospective Opinion*

The plaintiff's final challenge is to the administrative law judge's rejection of Dr. Stringos's terse retrospective opinion. Itemized Statement at 8-9. There is no question that Dr. Stringos was a treating physician, but that does not mean that the administrative law judge was required to adopt Dr. Stringos's opinion. Contrary to the plaintiff's contention, the administrative law judge did provide specific reasons for his rejection of that opinion, as I have already discussed. Record at 25, 26. Nothing further was required.

### Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings with respect to the appropriate exertional category

to be assigned to the plaintiff as part of the determination of his residual functional capacity before December 31, 2001.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 18th day of May, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge